George Overbeck et al. [1] v. Commissioner. Overbeck v. Commissioner
Docket Nos. 46546-46550.
United States Tax Court
T.C. Memo 1955-243; 1955 Tax Ct. Memo LEXIS 89; 14 T.C.M. (CCH) 967; T.C.M. (RIA) 55243; August 31, 1955
*89 1. Held, Meyer Overbeck received no taxable income in 1942 or 1945 except interest income in the amount of $697.50 in 1945. 2. Held, Meyer Overbeck purchased United States bonds in 1945 with money acquired by him or his deceased wife prior to 1942. The purchase of the bonds did not represent the receipt of taxable income by either of his two sons and the interest on the bonds was not the incomeof those sons. 3. Held, the books and records of both George and Louis Overbeck clearly reflected their income and their unexplained bank deposits and expenditures do not represent the receipt of additional taxable income. 4. Held, respondent did not show that any part of the deficiencies of any of the petitioners was due to fraud with intent to evade tax. 5. Held, the assessment of the tax against George Overbeck and Louis and Claire Overbeck for 1944 is barred by the statute of limitations. Herman H. Krekstein, Esq., 1528 Walnut Street, Philadelphia, Pa., and Gerald Krekstein, Esq., for the petitioners. Stephen P. Cadden, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax *90 of petitioners (or petitioner's decedent in the case of the Estate of Meyer Overbeck) and additions to tax as follows: George Overbeck, Docket No. 46546 50%
10%
6%
Addition
Addition
Addition
Year
Deficiency
Sec.
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
293(b)
1944
$ 2,826.47
$ 1,413.24
$ 282.65
$ 169.59
1945
67,552.09
33,776.05
4,053.13
1946
3,123.80
1,561.90
187.43
1947
6,478.50
3,239.25
388.71 George Overbeck and Selma Overbeck, Docket No. 46547 50%
Addition
Year
Deficiency
Sec. 293(b)
1948
$ 4,782.14
$ 2,391.07 Louis Overbeck, Docket No. 46548 50%
Addition
Year
Deficiency
Sec. 293(b)
1947
$ 4,361.66
$ 2,180.83 Louis Overbeck and Claire Overbeck, Docket No. 46549 50%
6%
Addition
Addition
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
1944
$ 4,179.03
$ 2,089.52
$ 250.74
1945
52,821.55
26,410.78
3,169.29
1946
9,441.42
4,720.71
566.49
1948
441.20 Estate of Meyer Overbeck, Deceased, George Overbeck and Louis Overbeck, Executors, Docket No. 46550 50%
25%
10%
6%
Addition
Addition
Addition
Addition
Year
Deficiency
Sec.
Sec.
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
293(b)
291(a)
1943
$ 4,469.50
$ 2,234.75
$ 1,117.38
1945
45,834.14
22,917.07
11,458.54
$ 4,583.41
$ 2,750.05
1947
66.29
1/1/48 to
8/9/48
56.36
*91 The proceedings were consolidated for hearing and opinion. The parties have agreed to a number of adjustments which increase or decrease the taxable income of George Overbeck and the taxable income of Louis and Claire Overbeck as follows: George
Louis and
Overbeck
Claire Overbeck
1944
$ 132.97
$ 46.80
1945
(23.18)
795.01
1946
1,318.84
6,496.20
1947
500.81
541.73 *
1948
(2,219.67) **
(91.58)
Petitioners have also conceded that Meyer Overbeck received unreported interest income in the amount of $697.50 in 1945 and claimed deductions for interest paid in 1947 and 1948 which were excessive in the amounts of $66.73 and $2.17, respectively. The issues for decision are: 1. Whether the Commissioner correctly determined that Meyer Overbeck received unreported taxable income in the amounts of $15,925 and $72,224.09 in the years 1942 and 1945, respectively. 2. Whether the Commissioner correctly disallowed deductions for interest allegedly paid by Meyer Overbeck in amounts of $540.31 in 1947 and *92 $525.24 in 1948. 3. Whether the Commissioner correctly determined that Louis Overbeck and George Overbeck realized taxable income of $72,204.09 and $72,224.09, respectively, in the year 1945 represented by United States bonds allegedly purchased and that each of the above petitioners received interest on the above bonds in the amounts of $697.50 in 1945 and $1,395 in each of the years 1946, 1947, and 1948. 4. Whether the Commissioner correctly increased the taxable income of George Overbeck and the taxable income of Louis and Claire Overbeck by the amounts of unexplained bank deposits and expenditures as follows: George
Louis and
Overbeck
Claire Overbeck
1944
$1,270.29
$1,738.85
1945
6,900.55
3,776.49
1946
2,454.39
1947
3,202.98
3,795.74 *
5. Whether the Commissioner correctly determined additions to tax for fraud against Meyer Overbeck for the years 1943 and 1945, against George Overbeck for the years 1944, 1945, 1946, and 1947, against Louis and Claire Overbeck for the years 1944, 1945, and 1946, and against Louis Overbeck for the year 1947. 6. Whether the statute of limitations *93 has run on Louis and Claire Overbeck's taxable year 1944 and on George Overbeck's taxable years 1944 and 1945. Findings of Fact The stipulated facts are so found. George Overbeck and Louis Overbeck (hereinafter referred to as George and Louis, respectively) are brothers and are the executors of the estate of their father, Meyer Overbeck(hereinafter referred to as Meyer) who died August 9, 1948. Selma Overbeck and Claire Overbeck are the wives of George and Louis, respectively, and are petitioners herein for the sole reason that in some of the years involved they filed joint returns with their husbands. All of the petitioners resided in Philadelphia, Pennsylvania during the taxable years involved. Meyer filed no income tax returns for any of the years 1942, 1943, or 1945. He filed income tax returns for the years 1946 and 1947 and his executors filed his income tax return for the period January 1, 1948 to August 9, 1948 with the collector of internal revenue for the first district of Pennsylvania. George filed individual income tax returns for the years 1944 to 1947, inclusive, and a joint return with his wife for the year 1948 with the above collector. George's returns for *94 1944 and 1945 were filed on September 15, 1945 and March 15, 1946, respectively. The 1945 return was signed by George's attorney who prepared the return but was not signed by George. Louis filed an individual income tax return for the year 1947 and joint income tax returns with his wife for the years 1944, 1945, 1946, and 1948 with the above collector. Their 1944 return was filed on March 15, 1945. The statutory notices of deficiency were mailed on November 4, 1952. Meyer was born in Russia in 1867 and immigrated to the United States about the time of the Spanish American War. He was married in Russia, and his wife and first child, Bernard, came to this country a few years after Meyer. Before he came to the United States, Meyer owned a distillery, farm, and brick kiln in Russia. His wife was in the grain brokerage business. After Meyer came to this country, he went into the clothing manufacturing business in Philadelphia. He gave up his business around 1925, but finding idleness boring he worked for others until around 1928, when he retired. Meyor's sons, Bernard, George, and Louis, were born in 1895, 1904, and 1905, respectively. Bernard and George were pharmacists, and Louis *95 is a dentist. In 1930 Bernard and George purchased a threestory building at 2501 South Broad Street in Philadelphia, and, thereafter, until Bernard died in 1944, they operated a drugstore on the first floor of that building. Since the death of Bernard, George has operated the drugstore as the sole proprietor. In 1930 Louis took over the second floor of the building for his dental offices and has had his offices there since that time. Meyer and his wife resided on the third floor of the building from 1930 until their deaths in 1948 and 1944, respectively. George lived on the third floor with his parents, and after his marriage in 1939, his wife also lived there. During the years 1942 to 1945, inclusive, Meyer was in poor health. He had hardening of the arteries, an asthmatic heart, and his lungs would flood often, causing a severe cough. He spent most of his time resting or looking out of the kitchen window. Occasionally he would visit the drugstore on the first floor. In those years he had no business callers, made no telephone calls, and engaged in no business transactions except to purchase bonds. He had no income in those years except interest of $697.50 in the year 1945. In *96 the spring of 1945, at a time when Meyer was in bed with an attack of pleurisy, he asked his sons to open his trunk. George did and found that it contained three muslin bags. Opening one of the bags, George and Louis saw that it contained money. Most of the money was in large "blanket-sized" bills which many years before had been withdrawn from circulation. The money looked and smelled very old. It had been acquired by Meyer or his deceased wife prior to the beginning of the taxable years involved. Several days later Meyer went to a bank and purchased $62,000 in 2 1/4 per cent United States Treasury bonds using the above currency. In addition to the above described bonds, at the death of Meyer his sons found among his effects certain Series E and Series F bonds issued by the United States Treasury. Series E and Series F bonds are issued at 75 and 74 per cent of face value, respectively. Face value is the amount received at maturity. No interest is paid until maturity or redemption prior thereto. The date of issuance of these Series E and Series F bonds, and the aggregate face amount of bonds issued on each of those dates was as follows: July 1, 1942
$10,000
June 6, 1942
1,500
January 26, 1944
50
November 22, 1944
100
December 11, 1944
100
April 19, 1945
10,000
March 22, 1945
10,000
March 29, 1945
1,000
September 26, 1947
1,400
March 20, 1948
200
March 29, 1948
200
*97 Respondent determined that Meyer realized unreported taxable income in the amounts of $15,925 and $72,224.09 in the years 1942 and 1945, respectively, in addition to interest income in the amount of $697.50 received in 1945. On March 21, 1947 Meyer borrowed $31,000 from the Pennsylvania Company at 2 1/2 per cent interest, depositing $40,000 of the 2 1/4 per cent Treasury bonds as collateral security. George collected the interest on the 2 1/4 per cent Treasury bonds for his father. He also paid interest for his father on the $31,000 loan in the amounts of $540.31 in 1947 and $525.24 in 1948 prior to his father's death. Meyer repaid George the amounts advanced for interest on the $31,000 loan. In Meyer's income tax returns deductions were claimed for interest paid in the amounts of $607.04 for 1947 and $527.41 for the period January 1, 1948 to August 9, 1948. Respondent disallowed the full amount of the deductions. George maintained the books and records of the drugstore after he became the sole proprietor on November 1, 1944. Until the end of 1945 there were two cash registers and thereafter there were three cash registers in the drugstore. All sales were rung up on the cash *98 registers. At the end of each day the total rung up on each cash register was checked with the amount in the till and was entered in a cash book. A column was maintained for each cash register until 1947 when only the total of all three cash registers was entered. Each day, merchandise such as ice cream, cones, and cakes was purchased for cash and the amount of such purchases was entered in the cash book. All other purchases were paid for by check. The cancelled checks furnished a record of these expenditures. Louis practiced dentistry on the second floor of the building at 2501 South Broad Street throughout the taxable years involved. During the periods July 26, 1946 to December 31, 1946 and October 1, 1947 to December 31, 1948 he practiced in partnership with other dentists. During all of the years involved Louis kept a card system record of his professional receipts and expenses. Beginning October 1, 1947 he also maintained a "log book" containing patients' names, the fees paid, and expenses. He also kept cancelled checks evidencing expenses. Louis correctly prepared the joint income tax returns of himself and his wife for the years 1944 and 1945 using the above records. His *99 card system records for the years 1944 and 1945 were lost during extensive renovation of his offices in 1946. Beginning in 1946 George and Louis made investments in real estate and stock. The real estate was managed by real estate agents who kept records of all receipts and disbursements except for certain expenditures made by George which are evidenced by cancelled checks. They had joint accounts with two stock brokerage firms. All purchases and sales of stock were made through these two firms. All broker's confirmations were retained. Except for stipulated amounts of interest on savings accounts and a small amount of other rental income received by George, no income other than that shown by the above records was received by George or Louis. Their books and records clearly reflected their taxable income in each of the taxable years involved. In the taxable years involved George and Louis made unexplained bank deposits and expenditures in amounts as follows: George
Louis
1944
$1,270.29
$1,738.85
1945
6,900.55
3,776.49
1946
2,454.39
None
1947
3,202.98
3,794.74
Respondent determined that the above amounts represented unreported taxable income. *100 He also determined that George and Louis realized additional unreported taxable income in the amounts of $72,224.09 and $72,204.09, respectively, represented by United States bonds allegedly purchased. He further included in the taxable income of each of them the interest on said bonds in the amounts of $697.50 in 1945 and $1,395 in each of the years 1946, 1947, and 1948. Opinion The investigation of the petitioners' tax returns was evidently sparked by Meyer's cash purchase of $62,000 in bonds in 1945. At Meyer's death it was discovered that he also had additional bonds which were issued in 1945. Finding that Meyer had no known source of income in that year, respondent used a shotgun approach and has determined that Meyer and each of his two sons received additional income in 1945 in the approximate amount of $72,000 represented by the purchase of bonds. Respondent apparently takes the position that, as bonds were purchased in 1945, someone, either the purchaser or one of his two sons, must have realized unreported taxable income in that year to the extent of the amount expended. Respondent also included in the taxable income of both of Meyer's two sons for the years 1946 through *101 1948 the interest on the $62,000 in bonds even though the interest was reported as the income of Meyer in at least two of those years. He further determined that Meyer received taxable income in the amount of $15,925 in 1942 presumably on the basis of bonds issued in 1942 which were found among Meyer's effects at his death. Petitioners quite naturally oppose respondent's position. We have found as a fact that the $62,000 used to purchase bonds was acquired by Meyer or his wife; and, therefore the existence of the cash could not indicate the receipt of unreported taxable income by either George or Louis and the interest on the bonds was not taxable to either of them. Other bonds owned by Meyer issued in 1945 also did not represent the receipt of additional taxable income by either George or Louis. We have further found that the money used to purchase bonds was acquired prior to 1942 and that except for interest on bonds in the amount of $697.50 paid to Meyer in 1945, Meyer received no taxable income in either 1942 or 1945 which disposes of respondent's determination that he received income in the amounts of $15,925 and $72,224.09 in the years 1942 and 1945, respectively. These findings *102 in our opinion are supported by overwhelming and uncontradicted evidence. We have the testimony of bankers who counted the $62,000 that it looked and smelled very old and consisted for the most part of large "blanket-sized" bills which many years before had been withdrawn from circulation. The bonds were purchased by Meyer and were included in his estate tax return. Meyer's health was very bad, he had retired in 1928, and the people who knew him best and were around him frequently testified that he engaged in no business transactions during the years 1942 through 1945. Respondent does not even attempt to guess as to the source of his alleged income. Respondent also determined that Meyer was liable for additions to tax for fraud for the years 1942 and 1945 under the provisions of section 293(b) of the Internal Revenue Code of 1939. [1] The only income received by Meyer in those years was $697.50 in interest in 1945, and we think it is clear that respondent has not shown that the failure to report that amount was due to fraud with intent to evade tax. *103 The only other remaining issue involving Meyer concerns his right to deductions for interest paid in the amounts of $540.31 in 1947 and $525.24 during the period January 1, 1948 to August 9, 1948. The respondent concedes that Meyer's son George paid the above interest for his father on the bank's $31,000 loan to Meyer. The only question is whether Meyer repaid George. We have found as a fact that he did; and, therefore, the deductions are allowable. The parties have stipulated that both George and Louis made certain bank deposits and expenditures during the taxable years involved in the amounts set forth in our findings of fact which they are now unable to explain. Respondent has determined that these amounts represent unreported taxable income. However, we have found that the books and records of both George and Louis clearly reflected their net income, and under those circumstances respondent is not warranted in determining that they received unreported income on the basis of unexplained bank deposits and expenditures. Cf. Thomas A. Talley, 20 T.C. 715. This applies even to Louis' taxable years 1944 and 1945 although a part of his records for those years was lost, *104 as we are satisfied that the lost records were carefully kept and that the returns filed for those two years were correctly prepared and accurately reflected the income of himself and his wife. Cf. Alfred A. Nahman, 21 B.T.A. 121. Therefore, respondent's addition of the above described amounts to net income is not sustained. Furthermore, while there are some deficiencies due to the stipulated adjustments, there is no evidence to support respondent's determination that part of the deficiencies of both George and Louis were due to fraud with intent to evade tax within the purview of section 293(b). Cf. Denny York, 24 T.C. 742 (filed July 22, 1955). George has pladed that the assessment of the tax for the years 1944 and 1945 is barred by the statute of limitations. Louis and his wife have made the same plea as to 1944. These petitioners have shown that their 1944 returns were filed more than three years prior to the mailing of the notices of deficiency. Respondent has relied upon the alleged fraud of the petitioners to toll the running of the statutory period. But, as there is no evidence of fraud, his defense fails; and we must hold that the assessment of *105 the tax is barred. With respect to the statute of limitations running on George's taxable year 1945, the so-called return which was filed for 1945 was signed by the attorney who prepared it, but was not signed by George. As it was not signed by the taxpayer, it did not satisfy the statutory requirements for a return. Theodore R. Plunkett, 41 B.T.A. 700, affd. (C.A. 1) 118 Fed. (2d) 644. Therefore, it did not start the running of the statute of limitations. Lucas v. Pilliod Lumber Co., 281 U.S. 245. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: George Overbeck and Selma Overbeck, Docket No. 46547; Louis Overbeck, Docket No. 46548; Louis Overbeck and Claire Overbeck, Docket No. 46549; Estate of Meyer Overbeck, Deceased, George Overbeck and Louis Overbeck, Executors, Docket No. 46550.↩
*. The adjustment for 1947 relates only to Louis Overbeck. ↩
**. This adjustment decreasing taxable income for 1948 also involves Selma Overbeck.↩
*. This increase for 1947 affects only Louis Overbeck.↩
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩